**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CURTIS O'BRIEN,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>*Defendants.* | No. 23-cv-3807 (DLF) |

**MEMORANDUM OPINION**

Plaintiff Curtis O'Brien brings this action against the Department of Defense, the Department of the Army, and the National Guard Bureau under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Compl., Dkt. 1. Before the Court are the defendants' Motion for Summary Judgment, Dkt. 33, and O'Brien's Cross-Motion for Summary Judgment, Dkt. 36. For the following reasons, the Court will grant in part and deny in part the defendants' motion and deny O'Brien's cross-motion.

## I. BACKGROUND[1]

O'Brien enlisted in the Army National Guard on November 14, 2007. Defs.' Stmt. of Mat'l Facts (Defs.' Stmt.) ¶ 1, Dkt. 33-1. On February 27, 2012, the National Guard began processing O'Brien for administrative separation based on a report that he had tested positive for cocaine use during a unit urinalysis. *Id.* ¶¶ 3–4. With the assistance of counsel, O'Brien waived his right to challenge his separation at an administrative separation board in return for receiving a General

---

[1] Except as otherwise noted, the following facts are derived from undisputed portions of the statements of fact submitted by the plaintiff and the defendant. The Court therefore dispenses with parallel citations.

(Under Honorable Conditions) discharge. *Id.* ¶ 6. The Adjutant General approved the separation on those terms, and O'Brien was discharged on May 18, 2012. *Id.* ¶¶ 7–8.

On November 27, 2020, O'Brien submitted a FOIA request to the National Guard Bureau seeking "all records pertaining to the underlying reasons for [his] other than honorable discharge from the Army" including "[a]ll interagency and intra-agency records," "copies of all records relating to" his other than honorable discharge, and his "complete file" for his active duty dates. FOIA Request at 1–2, Dkt. 1-2. The Bureau acknowledged O'Brien's request on February 10, 2021, and requested additional information concerning the locations and dates of his military service, which O'Brien provided two days later. Pl.'s Stmt. of Mat'l Facts (Pl.'s Stmt.) ¶¶ 4–5, Dkt. 36-6. Over the next two years, O'Brien repeatedly sought updates on his request. *Id.* ¶¶ 6–17. On December 6, 2023, the Bureau informed O'Brien that his request was number 99 in its queue and had an estimated completion date of February 28, 2024. *Id.* ¶ 17. O'Brien filed this action on December 22, 2023. *Id.* ¶ 18.

The defendants began producing records responsive to O'Brien's request in 2024. The National Guard Bureau ultimately produced 31 pages of responsive records located by the Florida Army National Guard and the Army Human Resources Command separately produced 124 pages from O'Brien's Official Military Personnel File. Beharry Decl. ¶¶ 9–10, Dkt. 33-2. Both sets of records contained privacy redactions. Defs.' Stmt. ¶ 23. The Army Criminal Investigation Division (CID) also searched its investigative records systems but located no responsive records.[2] *Id.* ¶ 18.

---

[2] O'Brien disputes this response on the grounds that "[i]t is not possible for CID to have conducted this search prior to the FOIA request having been submitted in November 2020." Pl.'s Resp. to Defs.' Stmt. ¶ 18, Dkt. 36-5. But elsewhere, O'Brien seems to accept that the search did in fact occur. *See id.* ¶ 21. The Court therefore concludes that this "dispute" is immaterial as it concerns

After receiving these productions, O'Brien asked the agencies to search for records underlying his 2012 urinalysis. Pl.'s Stmt. ¶ 21. Assisted by the Department of Defense identification number that O'Brien supplied, the defendants determined that O'Brien's urine specimen had been tested at the Air Force Drug Testing Laboratory in San Antonio, Texas. Defs.' Stmt. ¶ 19. The laboratory confirmed that it had tested O'Brien's specimen on February 14, 2012, and that the specimen tested positive for cocaine, but explained that it did not have the underlying records because such records are maintained for only five years. *Id.* ¶¶ 19–20. The laboratory later identified an SF-135 form documenting the destruction of O'Brien's urinalysis records on February 23, 2018, pursuant to the agency's five-year records retention policy. Second Carpenter Decl. ¶¶ 2–3, Dkt. 37-1.

After the National Guard Bureau completed its search and production in May 2025, the parties informed the Court that they "agree[d] that all records within [the defendants'] possession have been disclosed to [O'Brien]." Joint Status Report at 1, Dkt. 29. The parties then cross-moved for summary judgment. Defs.' Mot. for Summ. J., Dkt. 33; Pl.'s Cross-Mot. for Summ. J., Dkt. 36.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Paige v. DEA*, 665 F.3d 1355, 1358 (D.C. Cir. 2012) (citation modified). A fact is material

---

the date the defendants attribute to the Army CID's response letter, rather than whether the Army CID actually conducted a search.

if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Privacy Act mandates that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). The Privacy Act also allows individuals to request notice that an agency's system of records contains information about them. *See* 5 U.S.C. §§ 552a(e)(4)(G), (f)(1).

The Privacy Act and FOIA are structurally similar. *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981). Both provide a requester with access to federal agency records about the requester and create a private cause of action when an agency fails to comply with a valid request. *See* 5 U.S.C. §§ 552a(d)(1), (g)(1) (Privacy Act); 5 U.S.C. §§ 552(a)(3)(A), (a)(4)(B) (FOIA). Unlike FOIA, however, the Privacy Act "does not have disclosure as its primary goal. Rather, the main purpose of the Privacy Act's disclosure requirement is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456–57 (D.C. Cir. 1996).

Under both the Privacy Act and FOIA, an agency must conduct an adequate and reasonable search for relevant records. *See Chambers v. DOI*, 568 F.3d 998, 1005 (D.C. Cir. 2009) (noting that "the Privacy Act, like FOIA, requires" that a search "be reasonably calculated to uncover all

relevant documents") (citation modified). In this Circuit, courts apply the same standard under both statutes to determine the adequacy of a search. *See id.*; *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam) (affirming the adequacy of a search under the Privacy Act for the same reasons the search was affirmed under FOIA). Thus, "[i]n a suit seeking agency documents—whether under the Privacy Act or the FOIA—at the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Chambers*, 568 F.3d at 1003 (citation modified). The agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation modified).

If agency searches reveal records responsive to a Privacy Act or FOIA request, an agency may withhold access to the records if the statutes exempt them from disclosure. *See* 5 U.S.C. §§ 552a(j)(2), (k)(2), 552(b). Although the Privacy Act and FOIA "substantially overlap," the statutes "are not completely coextensive; each provides or limits access to material not opened or closed by the other." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 78 (D.C. Cir. 1982). The Privacy Act and FOIA "seek[] in different ways to respond to the potential excesses of government," and "[e]ach, therefore, has its own functions and limitations." *Id.* at 76. Accordingly, "[t]he two acts explicitly state that access to records under each is available without regard to exemptions under the other." *Id.* This means that, when both statutes are at play, an agency seeking to withhold records must "demonstrate that the documents fall within some exemption under *each* Act." *Martin v. Off. of Special Counsel, Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). "If

a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." *Id.*

## III. ANALYSIS

### A. Adequacy of the Search

O'Brien first challenges the adequacy of the defendants' searches. To prevail on summary judgment, the defendants must show that they "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Watkins L. & Advoc., PLLC v. DOJ*, 78 F.4th 436, 442 (D.C. Cir. 2023) (citation modified). That showing requires declarations identifying the files searched, the persons who conducted the searches, and a reasonable "systematic approach to document location." *Heartland All. for Hum. Needs & Hum. Rts. v. USCIS*, 406 F. Supp. 3d 90, 110 (D.D.C. 2019) (citation modified). If an agency carries its burden of showing reasonableness, the burden shifts to the requester "to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Id.* (citation modified). The requester must "rebut" the agency's showing of reasonableness with "evidence . . . showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citation modified).

To establish the reasonableness of the search, the defendants submitted declarations from (1) Ronnie Beharry, an information and privacy specialist in the National Guard Bureau's Office of Information and Privacy (Beharry Decl., Dkt. 33-2); (2) Ronald Hoggard, the senior government information specialist for the Department of the Army Human Resources Command (Hoggard Decl., Dkt. 33-3); (3) Veronica Carpenter, a compliance specialist at the Air Force Drug Testing Laboratory at Joint Base San Antonio–Lackland (First Carpenter Decl., Dkt. 33-4; Second

Carpenter Decl., Dkt. 37-1); and (4) Mariya Jullien, a senior information release specialist in the Department of the Army, Criminal Investigation Division (Jullien Decl., Dkt. 33-5). These declarations describe the files searched, the persons who conducted the searches, and the methods used.

The National Guard Bureau searched its own correspondence repositories and FOIA case-management systems and tasked the Florida Army National Guard, where O'Brien had served, with conducting additional searches. Beharry Decl. ¶¶ 5–6. The Florida National Guard conducted an initial search and then a second, more comprehensive search that covered its Drug and Alcohol Management Information System, O'Brien's former units, the Office of the Staff Judge Advocate, and the Separation and Archives branch. *Id.* ¶¶ 6, 8(a). The Guard conducted searches using multiple variations of O'Brien's name, his Social Security number, and his date of birth. *Id.* ¶ 8(b)–(c). Those searches located records concerning O'Brien's positive urinalysis and separation proceedings and ultimately produced 31 pages of responsive records after duplicates and nonresponsive transmittals were removed. *Id.* ¶¶ 8(d), 9.

The defendants also referred O'Brien's FOIA request to Army Human Resources Command, the official custodian of personnel files for former Army National Guard members. *Id.* ¶ 10; Hoggard Decl. ¶ 2. Human Resources Command searched its Integrated Personnel Electronic Records Management System using O'Brien's name and Social Security number and produced 124 pages from his Official Military Personnel File. Hoggard Decl. ¶ 3. Because the request implicated O'Brien's positive drug test, the defendants also consulted Army Criminal Investigation Division and the Air Force Drug Testing Laboratory. Beharry Decl. ¶¶ 11–12. The Criminal Investigation Division searched its investigative record systems and found no responsive records. Jullien Decl. ¶¶ 2–6. The laboratory confirmed that it had tested O'Brien's specimen in

February 2012 and that the specimen tested positive for cocaine, but it located no underlying testing records because such records are retained for only five years. First Carpenter Decl. ¶¶ 2–6. Taken together, these declarations provide a "reasonably detailed" account of searches calculated to locate responsive records. *See Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citation modified).

O'Brien has not produced countervailing evidence creating a dispute of material fact as to the adequacy of the search or the defendants' good faith. He argues that the search was inadequate because the agencies failed to produce the underlying records from his 2012 urinalysis, *see* Pl.'s Mem. Opp'n & Cross-Mot. for Summ. J. at 7–9, Dkt. 36-1, and that the defendants offer only a "bare statement" that the urinalysis records were destroyed, *see id.* at 8 (citing *Shapiro v. DOJ*, 944 F.3d 940, 943 (D.C. Cir. 2019)).

But "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Thus, "the agency's failure to turn up a particular document" does not itself establish an inadequate search. *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004); *see also Iturralde*, 315 F.3d at 315 ("After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."). Here, the agencies searched the locations reasonably likely to contain the requested records. That the searches did not produce the underlying urinalysis records—which the laboratory had destroyed pursuant to its records retention policy—does not render the searches inadequate.

Although an agency must provide "adequate assurance that the documents were in fact destroyed," it need only identify "some underlying fact or facts to show the document's likely

fate." *Shapiro*, 944 F.3d at 943 (citation modified). The defendants have done so here. Carpenter explains that the Air Force Drug Testing Laboratory retains testing records for five years and that an SF-135 form documents the destruction of O'Brien's records on February 23, 2018—five years after it tested O'Brien's specimen. Second Carpenter Decl. ¶¶ 2–3. Indeed, *Shapiro* recognized that a record logging a file's destruction, if described in an affidavit, "would suffice." 944 F.3d at 943. And because the defendants have established that the laboratory is "no longer in possession of" the records, FOIA does not require "further action in order to produce" them. *Id.* (citation modified).

The same reasoning disposes of O'Brien's Privacy Act access claim to the extent it is based on records the agencies failed to locate or produce at all. The Privacy Act permits an individual to obtain access to his records maintained in an agency system of records, *see* 5 U.S.C. § 552a(d)(1), and authorizes suit when an agency "refuses to comply" with such a request, *id.* § 552a(g)(1)(B). As explained above, the agencies conducted adequate searches and produced the responsive records they located. An agency cannot be required to produce records that are no longer in its possession, custody, or control. *See Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 61 (D.D.C. 2011). Accordingly, that aspect of O'Brien's Privacy Act claim is moot.

**B. Redactions**

O'Brien next challenges the agencies' redactions. "FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal

privacy," *id.* § 552(b)(7)(C). When Exemption 7(C) applies, courts "focus" on that exemption because it "establishes a lower bar for withholding material." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (citation modified). "To determine whether disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy for purposes of Exemption 7(C), [a court] must balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Roth v. DOJ*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (citation modified). The agency bears the burden of "describ[ing] the justifications for nondisclosure with reasonably specific detail" and demonstrating that "the information withheld logically falls within the claimed exemption." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation modified).

The agencies have not carried that burden on the present record. In responding to O'Brien's FOIA request, the agencies provided only vague and cursory explanations of the redactions applied. For example, the Human Resources Command explained in its response letter that it had excised "privacy-related information about parties other than" O'Brien, which "may include social security numbers, home addresses, telephone numbers, signatures, etc.," Pl.'s Opp'n, Ex. 3, Dkt. 36-6, but it did not identify which categories of information it actually withheld or the FOIA exemption supporting its redactions, *see id.* The National Guard Bureau provided somewhat more specific information, explaining that it withheld "the names of Department of Defense employees below the rank of General Officer as well as personal information on third parties" under Exemption 6. Pl.'s Opp'n, Ex. 2, Dkt. 36-6. The only declaration the Bureau submitted that addressed redactions was similarly cursory, stating that "there were no substantive withholdings . . . beyond standard privacy redactions where required" and that "[i]f any minimal redactions were applied, those were made pursuant to FOIA Exemptions 6 and/or 7(C)." Beharry

Decl. ¶ 14. These generalized assertions do not permit the Court to connect the redactions to particular exemptions or the privacy interests those exemptions protect. *See Larson*, 565 F.3d at 862. That deficiency is particularly apparent as to Exemption 7(C) because neither the declarations nor the response letters identify which, if any, records containing the challenged redactions were compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7). Whether records were compiled for law enforcement purposes turns on "how and under what circumstances" they were compiled and whether they relate to activity fairly characterized as enforcement. *Jefferson v. DOJ*, 284 F.3d 172, 176–77 (D.C. Cir. 2002). Although some of the records here, such as records concerning O'Brien's positive urinalysis, may meet this standard, the agencies do not explain which of the records containing the challenged redactions, if any, were compiled for a law enforcement purpose. Indeed, the National Guard Bureau invoked only Exemption 6 in its response letter, and Beharry's declaration states only that, "[i]f any minimal redactions were applied," they were made pursuant to Exemptions 6 "and/or 7(C)." Beharry Decl. ¶ 14. The defendants must still meet their burden to provide "a relatively detailed justification" showing why an exemption applies to each "particular part of a withheld document." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). That requires identifying the records or information compiled for law enforcement purposes and explaining why the challenged redactions within those materials fall within Exemption 7(C).

The agencies also have not satisfied FOIA's foreseeable-harm requirement. An agency may withhold exempt information only if it "reasonably foresees that disclosure would harm an interest protected by" the applicable exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). That requirement imposes an "'independent and meaningful burden on agencies'" to "articulate both the nature of the harm [from release] and the link between the specified harm and the specified information

contained in the material withheld." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (citation modified). Although the National Guard Bureau stated that it "considered the foreseeable harm standard," Pl.'s Opp'n, Ex. 2, it did not identify any harm that it reasonably foresaw would result from disclosure, and Beharry's declaration does not address foreseeable harm at all.

The agencies argue that the withheld information consists only of routine third-party identifiers and that O'Brien has not identified a public interest sufficient to outweigh the third parties' privacy interests. *See* Defs.' Reply at 9–11, Dkt. 37. There may ultimately be little difficulty justifying many of these redactions. After all, Social Security numbers, home addresses, telephone numbers, and other third-party identifying information implicate the kinds of privacy interests protected by FOIA's privacy exemptions. But that does not relieve the agencies of their burden to establish what information they withheld and why it is covered by an exemption. *See* 5 U.S.C. § 552(a)(4)(B); *Larson*, 565 F.3d at 862. Neither general descriptions of the kinds of information the agencies might have withheld nor characterizations of redactions as standard or routine relieve agencies of their burden to justify their withholdings with reasonable specificity. *See Comptel v. FCC*, 910 F. Supp. 2d 100, 124 (D.D.C. 2012).

The agencies likewise have not established that the challenged redactions are permissible under the Privacy Act. As explained above, when records are subject to both FOIA and the Privacy Act, an agency must establish a basis for withholding under both statutes. *See Martin*, 819 F.2d at 1184. Here, the agencies have not identified any Privacy Act exemption applicable to the challenged redactions. The Court therefore cannot determine on the present record whether the agencies properly withheld the redacted information under the Privacy Act.

Accordingly, the Court will deny both parties' motions for summary judgment as to the redactions and permit the agencies to submit supplemental declarations identifying the categories of information withheld, the exemption or exemptions asserted for each category, the privacy interests implicated by disclosure, any reasonably foreseeable harm from disclosure, and the basis for concluding that no additional nonexempt information is reasonably segregable. To the extent the defendants continue to rely on FOIA Exemption 7(C), they must also explain why the relevant records or information were compiled for law enforcement purposes. And to the extent they contend that any challenged redaction is permissible under the Privacy Act, they must identify the statutory basis for withholding.

**C. Privacy Act Record-Maintenance Claim**

The Privacy Act requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). An individual may bring a civil action when an agency fails to satisfy that requirement and "consequently a determination is made which is adverse to the individual." *Id.* § 552a(g)(1)(C). To prevail on such a claim, a plaintiff must establish that "(1) he has been aggrieved by an adverse determination; (2) the agency failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; [and] (3) the agency's reliance on the inaccurate records was the proximate cause of the adverse determination." *Chambers*, 568 F.3d at 1007 (citation modified). To recover damages, a plaintiff must also establish that the agency acted "intentionally or willfully." *Id.*; *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996); *see also* 5 U.S.C. § 552a(g)(4).

O'Brien argues that the Air Force Drug Testing Laboratory's destruction of the underlying records associated with his 2012 urinalysis violated the Privacy Act. *See* Pl.'s Mem. Opp'n & Cross-Mot. for Summ. J. at 12–15; Second Carpenter Decl. ¶¶ 2–3. But even assuming the defendants' failure to preserve those records beyond the five-year retention period violated § 552a(e)(5), O'Brien has not identified an adverse agency determination resulting from the incomplete records.

He argues that without the urinalysis records he will be unable to obtain, or effectively seek, an upgrade of his General (Under Honorable Conditions) discharge to an Honorable discharge and consequently will remain ineligible for certain veterans' benefits. *See* Pl.'s Mem. Opp'n & Cross-Mot. for Summ. J. at 13–15. Yet he does not identify any application for a discharge upgrade that an agency has denied because of the missing urinalysis records. His difficulty in pursuing a future discharge upgrade is thus, at most, an "adverse effect," not the "specific 'adverse determination'" required by § 552a(g)(1)(C). *Chambers*, 568 F.3d at 1007. And without an adverse determination, O'Brien necessarily cannot show that the agencies' reliance on an inaccurate or incomplete record proximately caused such a determination. *See id.*

*Morinville v. U.S. Patent & Trademark Office*, 442 F. Supp. 3d 286 (D.D.C. 2020), on which O'Brien relies, is distinguishable. There, the plaintiffs alleged that the agency's placement of a secret "flag" on their patent applications prevented the applications from proceeding and thus operated as a constructive denial. *Id.* at 293–94. Here, by contrast, O'Brien identifies no agency action denying or otherwise disposing of an application for a discharge upgrade. The possibility that the missing records may hinder a future application does not itself constitute an adverse agency determination. *See Chambers*, 568 F.3d at 1007.

Nor has O'Brien produced evidence from which a reasonable factfinder could conclude that the agencies acted intentionally or willfully, as is required to recover damages. That standard requires conduct "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Deters*, 85 F.3d at 660–61 (citation modified). O'Brien argues that the agency acted willfully because it adopted a retention schedule that permitted destruction of urinalysis records before the expiration of the period in which a servicemember might seek a discharge upgrade. *See* Pl.'s Mem. Opp'n & Cross-Mot. for Summ. J. at 14–15. But the application of an established retention policy, without more, does not show that the agency acted "without grounds for believing [its conduct] to be lawful" or "flagrantly disregard[ed]" O'Brien's rights under the Privacy Act. *Deters*, 85 F.3d at 660.

Accordingly, the Court will grant the defendants' motion for summary judgment and deny O'Brien's cross-motion as to his Privacy Act record-maintenance claim.

**D. Attorneys' Fees**

Finally, O'Brien requests attorneys' fees and costs. *See* Pl.'s Mem. Opp'n & Cross-Mot. for Summ. J. at 17. FOIA permits an award of "reasonable attorney fees and other litigation costs reasonably incurred" when "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A court first determines whether the plaintiff is "eligible" for fees because he substantially prevailed and, if so, whether he is "entitled" to fees under several equitable factors. *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation modified). Because the Court will deny both parties' motions for summary judgment as to the agencies' redactions and permit the defendants to supplement the record, this litigation is not yet resolved, and any determination of O'Brien's eligibility for or entitlement to fees is premature. The Court will therefore deny his request for attorneys' fees and costs without prejudice.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the defendants' Motion for Summary Judgment, Dkt. 33, and deny O'Brien's Cross-Motion for Summary Judgment, Dkt. 36. A separate order consistent with this decision accompanies this memorandum opinion.

Dabney L. Friedrich

DABNEY L. FRIEDRICH
United States District Judge

September 30, 2026